UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANTHONY LUIS PAREDES,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN JOSE, et al.,<br><br>Defendants. | Case No.  22-cv-00758-BLF<br><br>**ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>[Re:  ECF No. 54] |

This case concerns allegations of excessive force in the deployment of a police canine by officers in the San Jose Police Department, and the City of San Jose's alleged policies regarding such uses of force.  Before the Court is the officers and City's "Partial Motion to Dismiss Plaintiff's Second Amended Complaint."  Mot., ECF No. 54; Reply, ECF No. 64.  Defendants move to dismiss Plaintiff Anthony Paredes's claims against the City.  They do not challenge his claims against the individual officers.  Mr. Paredes opposes the motion.  Opp'n, ECF No. 60.

The Court held a hearing on Defendants' motion on June 8, 2023.  For the reasons discussed at the hearing and provided below, Defendants' motion to dismiss is GRANTED IN PART WITH LEAVE TO AMEND AND DENIED IN PART.

## I.   BACKGROUND

This case arises from injuries Plaintiff Anthony Paredes sustained when a police dog clamped down on his neck during his arrest.  On February 7, 2022, Mr. Paredes's girlfriend stole two bottles of tequila from a grocery store in San Jose.  Second Amd. Compl. ¶ 10 ("SAC"), ECF No. 47.  A store employee attempted to detain Mr. Paredes's girlfriend as she was leaving the store.  *Id.*  Observing the interaction from the parking lot, Mr. Paredes ran to his girlfriend's aid and allegedly threatened the store employee.  *Id.*  The employee released Mr. Paredes's girlfriend,

United States District Court<br>Northern District of California

1 | and Mr. Paredes and his girlfriend fled on foot. *Id.*

2 | The store employee reported the incident to the police. *Id.* ¶ 11. A nearby police

3 | helicopter responded to the scene and identified Mr. Paredes running through a residential

4 | neighborhood. *Id.* The air officers informed K-9 Officer Michael Jeffrey, K-9 Sergeant Bret

5 | Hatzenbuhler, Officer Kyle Alleman, Officer Anthony Ledwith, Officer Shayna Nail, and several

6 | other unidentified San Jose police officers that Mr. Paredes was hiding underneath a tree in the

7 | backyard of a private residence. *Id.* ¶ 12. The helicopter unit announced over a loudspeaker that

8 | Mr. Paredes had one minute to surrender before the police deployed the police dog to find him.

9 | *Id.*

10 | Air officers informed the officers on the ground that Mr. Paredes had left his position

11 | under the tree and climbed inside a plastic yard waste bin on the side of the house. *Id.* ¶ 13.

12 | Officer Jeffrey, Sergeant Hatzenbuhler, Officer Alleman, Officer Ledwith, Officer Nail, and the

13 | police dog entered the house's backyard. *Id.* ¶ 14. Other officers surrounded the property. *Id.*

14 | Officer Jeffrey released the police dog, and the dog quickly found Mr. Paredes. *Id.* at 14.

15 | The dog barked and pawed at the bin in which Mr. Paredes was hiding for nearly a minute as

16 | police approached with their firearms drawn. *Id.* None of the officers announced their presence.

17 | *Id.* Sergeant Hatzenbuhler attempted to topple the waste bin with a broom he found beside the

18 | house but was unsuccessful. *Id.* Officer Alleman shoved the bin over with his hands, but the lid

19 | of the bin remained closed. *Id.* Mr. Paredes called out, "Alright! Alright!" *Id.* Officer Alleman

20 | pulled on the base of the bin, but the lid still remained closed. *Id.* ¶ 15. Mr. Paredes again called

21 | out, "Alright! Alright!" *Id.* Officer Alleman again pulled on the base of the bin, this time causing

22 | the lid to open and exposing Mr. Paredes. *Id.*

23 | Officer Jeffrey ordered the police dog to bite. *Id.* The dog clamped down on Mr.

24 | Paredes's neck. *Id.* Officers yelled to Mr. Paredes not to fight the dog and to let go of it. *Id.*

25 | Sergeant Hatzenbuhler and Officer Alleman pulled Mr. Paredes from the bin while the dog

26 | remained clamped on his throat. *Id.* at 16. Mr. Paredes was not resisting. *Id.*

27 | Officer Ledwith called to Officer Jeffrey to get the dog off Mr. Paredes. *Id.* ¶ 17. Officer

28 | Jeffrey pulled back on the dog's harness. *Id.* Officer Jeffrey had been trained, as all K-9 officers

United States District Court
Northern District of California

are trained, not to pull back on a police dog's harness when removing a bite. *Id.* The dog remained clamped down on Mr. Paredes's neck, and Officer Jeffrey pulled on the harness with enough force to lift Mr. Paredes's torso from the ground. *Id.*

Sergeant Hatzenbuhler and Officer Alleman grabbed Mr. Paredes's arms and as Officer Jeffrey continued to pull against the harness. *Id.* ¶ 18. Sergeant Hatzenbuhler put Mr. Paredes's left arm in an armbar control hold and stepped on Mr. Paredes's head as the dog continued to attack. *Id.* Sergeant Hatzenbuhler removed his foot from Mr. Paredes's head and once more Officer Jeffrey pulled on the dog's harness, lifting the dog from the ground and Mr. Paredes with him. *Id.* The officers yelled at Mr. Paredes to stop fighting, but he was not fighting. *Id.* Eventually, Officer Jeffrey ordered the dog to release. *Id.* After two unsuccessful commands, the dog released—sixty seconds after its initial bite. *Id.*

Mr. Paredes suffered multiple injuries to his neck: his hyoid bone and thyroid cartilage were broken; one of his vertebra was partially crushed; his larynx suffered trauma; he suffered damage to his nerves and cartilage; his neck remains disfigured; and he suffers shoulder pain. *Id.* ¶ 21.

Mr. Paredes's complaint asserts five claims: (1) excessive force in violation of the Fourth Amendment against Officer Jeffrey, Sergeant Hatzenbuhler, and Officer Alleman; (2) failure to intervene against Sergeant Hatzenbuhler, Officer Alleman, and Officer Nail; (3) municipal liability for unconstitutional customs and practices against the City of San Jose; (4) municipal liability for ratification against the City of San Jose; and (5) municipal liability for inadequate training against the City of San Jose. SAC ¶¶ 25-57.

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court

United States District Court
Northern District of California

3

1    need not "accept as true allegations that contradict matters properly subject to judicial notice" or

2    "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

3    inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation

4    marks and citations omitted).

5        While a complaint need not contain detailed factual allegations, it "must contain sufficient

6    factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

7    *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

8    A claim is facially plausible when it "allows the court to draw the reasonable inference that the

9    defendant is liable for the misconduct alleged." *Id.*

10        On a motion to dismiss, the Court's review is limited to the face of the complaint and

11    matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986);

12    *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

## III.    DISCUSSION

14        Mr. Paredes asserts three municipal liability claims against the City of San Jose under 42

15    U.S.C. § 1983.  "The Supreme Court in [*Monell v. Department of Social Services of City of New*

16    *York*, 436 U.S. 658 (1978)], held that municipalities may only be held liable under section

17    1983 for constitutional violations resulting from official [municipal] policy or custom." *Benavidez*

18    *v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021).  "[P]olicies can include written

19    policies, unwritten customs and practices, failure to train municipal employees on avoiding certain

20    obvious constitutional violations, and, in rare instances, single constitutional violations [that] are

21    so inconsistent with constitutional rights that even such a single instance indicates at least

22    deliberate indifference of the municipality." *Id.* (internal citations omitted).  "A municipality may

23    [also] be held liable for a constitutional violation if a final policymaker ratifies a subordinate's

24    actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). "In order to establish liability for

25    governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a

26    constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that

27    this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the

28    policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654

United States District Court
Northern District of California

F.3d 892, 900 (9th Cir. 2011) (alterations in original) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

Mr. Paredes's three claims against the City are based on an alleged unconstitutional custom or practice (Claim 3); ratification (Claim 4); and failure to train (Claim 5).  SAC ¶¶ 39-57. Defendants move to dismiss each of these claims.  Notice of Mot. 1, ECF No. 54.

### A.    Claim 3:  Unconstitutional Customs and Practices

A municipality may be held liable for its use of an unconstitutional policy if a plaintiff can "prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'"  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).  "Liability for improper custom may not be predicated on isolated or sporadic incidents"; rather, "[t]he custom must be so persistent and widespread that it constitutes a permanent and well settled city policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (internal quotation marks and citations omitted).  To withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere "formulaic recitations of the existence of unlawful policies, customs, or habits."  *Warner v. Cnty. of San Diego*, No. 10-cv-1057 BTM (BLM), 2011 WL 662993, at *4 (S.D. Cal. Feb. 14, 2011).

Defendants argue that Mr. Paredes's claim fails because Mr. Paredes has not articulated a specific unconstitutional custom or practice that the City has implemented.  Mot. 8.  Defendants further argue that Mr. Paredes has not alleged an unconstitutional custom or practice because the alleged bad acts are limited to those of a single officer.  Mot. 7.  Mr. Paredes responds that his custom or policy claim is supported by reference to other lawsuits and instances of excessive force.  Opp'n 18-19.  Mr. Paredes also argues that his allegations that the Chief of Police "reviewed the events surrounding Mr. Paredes' injuries and deemed the actions of these defendants . . . 'within policy,'" establish that that there must be an unconstitutional policy.  *Id.* at 20-21.

The Court agrees with Defendants that Mr. Paredes has not sufficiently identified an unconstitutional custom or practice.  Mr. Paredes's complaint purports to list multiple

unconstitutional "customs and practices." *See* SAC ¶ 40(a)-(o). A review of the list reveals that the alleged customs and practices fall into two groups, neither of which contains a plausibly alleged custom or practice that supports a *Monell* claim.

The alleged customs and practices in the first group do not support a *Monell* claim because they "consist[] of formulaic recitations of the existence of unlawful policies, customs, or habits" unsupported by any factual allegations. *Warner*, 2011 WL 662993, at *4. For example, Mr. Paredes alleges that the City has a custom and practice of "encouraging, accommodating, or ratifying the use of excessive, unreasonable, and potentially deadly force by its officers." SAC ¶ 40(a); *see also* SAC ¶¶ 40(b)-(g), (o)-(p). Boilerplate conclusions of customs and practices unsupported by factual allegations, like those alleged by Mr. Paredes, are routinely found to be insufficient to state a plausible *Monell* claim. *See Lesher v. City of Anderson*, No. 2:21-CV-00386-WBS-DMC, 2021 WL 2682161, at *4 (E.D. Cal. June 30, 2021); *Warner*, 2011 WL 662993, at *4; *see also Duenas v. Cty. of Imperial*, 2015 WL 12656291, at *4 (S.D. Cal. Mar. 9, 2015) (holding that a complaint "falls short of the requirements for pleading a *Monell* claim" because plaintiffs set forth a speculative list of various policies but no "allegations of underlying facts").

The other alleged "customs and practices" comprise acts of a single officer—Officer Jeffrey. *See* SAC ¶¶ 40(h)-(m). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino* 99 F.3d at 918. Thus, "[t]here is a distinction between multiple bad acts by one employee versus bad acts by multiple employees—*Monell* covers the latter, not the former." *Nguyen v. City of San Jose*, No. 5:21-CV-00092-EJD, 2022 WL 912891, at *7 (N.D. Cal. Mar. 29, 2022) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 831 (1985) (Brennan J., concurring)). Here, Mr. Paredes's complaint relies on six alleged canine deployments involving Officer Jeffrey occurring between September 14, 2018, and September 23, 2019. SAC ¶¶ 40(h)-(m). These allegations are insufficient to state a claim because one officer's acts over the course of a year do not create a plausible inference of that the City has adopted a custom or practice within the meaning of *Monell*.

United States District Court
Northern District of California

6

1    *See Nguyen*, 2022 WL 912891, at *4 ("While [the employee's] inspections may have been prolific

2    during his two years enforcing [the ordinance], the Court cannot plausibly infer a custom or

3    practice from one employee's activities for two years.").

4        Mr. Paredes's citation to two other lawsuits concerning SJPD canine officers does not save

5    his claim.  One of the cases, *Huipio v. City of San Jose*, concerns one of the six canine

6    deployments by Officer Jeffrey mentioned in the SAC.  *Compare* First Am. Compl. ¶¶ 1-25,

7    *Huipio v. City of San Jose*, No. 5:21-cv-7838-SVK (N.D. Cal. Feb. 2, 2022), ECF No. 23, *with*

8    SAC ¶ 40(3).  Thus, *Huipio* adds nothing to Mr. Paredes's otherwise deficient allegations.  The

9    other case, *Rosenbaum v. Dunn*, concerns a canine deployment by another SJPD officer.  Third

10   Am. Compl., *Rosenbaum v. Dunn*, No. 5:20-cv-4777-NC (N.D. Cal. Apr. 20, 2021), ECF No. 40.

11   But *Rosenbaum* too adds nothing to Mr. Paredes's allegations because Mr. Paredes does not

12   explain what custom or practice is demonstrated by the alleged conduct in *Rosenbaum*.  *See Vera*

13   *v. Pfiffer*, No. 2:19-06846 JAK (ADS), 2022 WL 4238099, at *4 (C.D. Cal. Aug. 8, 2022)

14   ("Plaintiff must identify a policy, practice, or custom that was the moving force behind these

15   alleged constitutional violations.").  Furthermore, one alleged incident involving an officer other

16   than Officer Jeffrey does not plausibly suggest that any challenged conduct was "so persistent and

17   widespread" that it "practically [had] the force of law" or had "become a traditional method of

18   carrying out policy."  *See Trevino*, 99 F.3d at 918.

19       Finally, Mr. Paredes's allegation that the Acting SJPD Police Chief "reviewed [the] events

20   and found that . . . the use of force was 'within policy'" does not render Mr. Paredes's custom or

21   practice claim plausible because, again, Mr. Paredes does not identify the challenged policy.  *See*

22   *Rodelo v. City of Tulare*, No. 1:15-CV-01675-KJM-BAM, 2016 WL 561520, at *1, 4 (E.D. Cal.

23   Feb. 12, 2016) (granting motion to dismiss custom or practice claim despite allegation that final

24   policymaker approved acts as being "within policy" because plaintiff "d[id] not identify any

25   specific policies or customs, explain how those policies or customs were deficient, or explain how

26   they specifically caused plaintiff harm").

27       Defendants' motion to dismiss Mr. Paredes's claim against the City for unconstitutional

28   customs or practices is GRANTED WITH LEAVE TO AMEND.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B.    Claim 4:  Ratification

"A municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions."  *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).  "To show ratification, a plaintiff must show that the authorized policymakers approve a subordinate's decision and the basis for it."  *Id.* (internal quotation marks and citation omitted).  The policymaker must have knowledge of the constitutional violation and actually approve of it—a failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim. *Id.*  In other words, ratification requires an authorized policymaker to make a "conscious, affirmative choice" to endorse a subordinate's actions.  *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992).

Mr. Paredes alleges that Dave Tindall, the City's then Acting Chief of Police, ratified the alleged unconstitutional conduct of the defendant officers when he deemed their actions "objectively reasonable" and "within policy."  SAC ¶ 47.  Defendants argue that these allegations fail to state a ratification claim because the Chief of Police is not a final policymaker under the San Jose City Charter.  Mot. 8-9.  Mr. Paredes concedes that the San Jose City Charter does not expressly vest the relevant policymaking authority in the Chief of Police but argues that the City has delegated that authority.  Opp'n 21.

Both parties rely on documents outside of the pleadings to support their arguments. Defendants rely on the San Jose City Charter.  *See* Mot. 8-9 (citing San Jose, Cal., City Charter §§ 701, 801).  Mr. Paredes relies on the SJPD Duty Manual.  *See* Opp'n 21 (citing of the SJPD Duty Manual, Procedure A 2801).  Neither party disputes the authenticity or accuracy of the documents, and both documents are publicly available on government webpages.[1]  The Court therefore takes judicial notice of both documents.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999-1000 (9th Cir. 2010) (noting that it is appropriate to take judicial notice of information

---

[1] The San Jose City Charter is available at https://www.sanjoseca.gov/your-government/appointees/city-clerk/city-charter.  The SJPD Duty Manual is available as a link from https://www.sjpd.org/records/documents-policies and is specifically located at https://www.sjpd.org/home/showpublisheddocument/314/638161981357100000.

"made publicly available by government entities" when "neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein").

"[T]he identification of policymaking officials is a question of state law." *Hyland v. Wonder*, 117 F.3d 405, 414 (9th Cir. 1997) (quoting *Praprotnik*, 485 U.S. at 124). To determine who has final policymaking authority, the Court looks to the City's charter and the ordinances enacted pursuant to it. *Nguyen*, 2022 WL 912891, at *11 (citing *Praprotnik*, 485 U.S. at 123-26); *cf. also Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 985 (9th Cir. 2002) ("[U]nder California law, a city's Charter determines municipal affairs such as personnel matters." (quoting *Hyland,* 117 F.3d at 414)). However, "[a]uthority to make municipal policy may be . . . delegated by an official who possesses such authority." *Christie v. Iopa*, 176 F.3d 1231, 1236 (9th Cir. 1999) (quoting *Praprotnik*, 485 U.S. at 127). Although "the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question," *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989), the question of whether policymaking authority has been delegated may be informed by underlying facts, *see Bouman v. Block*, 940 F.2d 1211, 1231 (9th Cir. 1991). "In deciding whether the official in question possess[es] final authority to establish municipal policy with respect to the challenged action, 'courts consider whether the official's discretionary decision is constrained by policies not of that official's making and whether the official's decision is subject to review by the municipality's authorized policymakers.'" *Weimer v. City of Sequim*, No. 3:14-CV-05713-RJB, 2015 WL 4759106 (W.D. Wash. Aug. 12, 2015) (quoting *Christie*, 176 F.3d at 1236-37).

The Court finds that Mr. Paredes has plausibly alleged that Chief Tindall, as Acting Police Chief, had been delegated the relevant final policymaking authority. As Defendants note, the City Charter states that the City Manager "shall direct and supervise the administration of all departments" and department heads are "subject to the direction and supervision of the City Manager." San Jose City Charter §§ 701, 801. However, Procedure A 2801 of the SJPD Duty Manual states that "[t]he Chief of Police is the chief executive officer of the Department and the final authority regarding all matters of policy, operations and discipline." This statement renders plausible that the City has delegated final policymaking authority over "all matters of policy,

1    operations and discipline" concerning SJPD to the Chief of Police and thus renders plausible Mr.

2    Paredes's allegation that Chief Tindall "had final policymaking authority for the City of San Jose

3    concerning the acts and omissions of police officers within his chain of command." *See* SAC ¶

4    46.  Accordingly, the Court disagrees with Defendants that Mr. Paredes has failed to plausibly

5    allege ratification by a final policymaker.

6            Defendants' motion to dismiss Mr. Paredes's ratification claim is DENIED.

7        **C.    Claim 5:  Inadequate Training**

8            "[F]ailure to train an employee who has caused a constitutional violation can be the basis

9    for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of

10   persons with whom the employee comes into contact."  *Long v. Cnty. of Los Angeles*, 442 F.3d

11   1178, 1186 (9th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  This

12   standard is met when "the need for more or different training is so obvious, and the inadequacy so

13   likely to result in the violation of constitutional rights, that the policymakers of the city can

14   reasonably be said to have been deliberately indifferent to the need."  *Canton*, 489 U.S. at 390.

15   "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a

16   'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983."  *Id.* at

17   389.  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim

18   turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

19           Defendants argue that Mr. Paredes fails to plead a plausible failure-to-train claim because

20   he does not allege a pattern of violations by multiple police officers.  Mot. 11-14.  According to

21   Defendants, Mr. Paredes's allegations that a single officer, Officer Jeffrey, committed multiple

22   constitutional violations are insufficient to state a failure-to-train claim.  *Id.*  Mr. Paredes responds

23   that he has alleged that the City's inadequate training extended to officers other than officer

24   Jeffrey.  Opp'n 22.  As an example, Mr. Paredes cites his allegation that "the City of San Jose,

25   acting with deliberate indifference to the rights of Mr. Paredes, and of the Public in general,

26   knowingly maintained, enforced, and applied customs and practices of . . . [i]nadequately

27   supervising, training, and disciplining officers who the City knew or in exercise of reasonable care

28   should have known were violent, abused their authority, and mistreated members of the public."

United States District Court
Northern District of California

1    *Id.* at 22-23.  Mr. Paredes also notes that there has been a separate federal action filed against an

2    SJPD police officer other than Officer Jeffrey concerning the City's police canine deployment

3    policies.  *See id.* (citing Third Am. Compl., *Rosenbaum v. Dunn*, No. 5:20-cv-4777-NC (N.D. Cal.

4    Apr. 20, 2021), ECF No. 40).

5            The Court finds that Mr. Paredes has not plausibly alleged a failure-to-train claim against

6    the City.  The Ninth Circuit has held that "evidence of the failure to train a single officer is

7    insufficient to establish a municipality's deliberate policy."  *Blankenhorn v. City of Orange*, 485

8    F.3d 463, 484 (9th Cir. 2007).  Accordingly, Courts in this Circuit have granted motions to dismiss

9    failure-to-train claims where the claims are based on allegations regarding the conduct of a single

10   officer.  *See, e.g.*, *Hayes v. Riley*, 525 F. Supp. 3d 1118, 1120 (N.D. Cal. 2020) (granting motion

11   to dismiss where "the complaint focuses almost entirely on the actions of [a single officer]"); *cf.*

12   *also Cavanaugh v. Cnty. of San Diego*, No. 3:18-CV-02557-BEN-LL, 2020 WL 6703592, at *37

13   (S.D. Cal. Nov. 12, 2020) (granting motion to dismiss where "Plaintiffs rely only on evidence

14   concerning two employees . . . which is not enough to constitute a program-wide policy of

15   deliberate indifference.") *aff'd*, No. 20-56311, 2021 WL 6103115 (9th Cir. Dec. 22, 2021).  Here,

16   the factual allegations underlying Mr. Paredes's failure-to-train claim solely concern the conduct

17   of a single officer—Officer Jeffrey.  Such allegations are insufficient to enable the court to infer

18   that the City has adopted "a program-wide policy of deliberate indifference" and are therefore

19   insufficient to plausibly allege a failure-to-train claim.  *See Cavanaugh*, 2020 WL 6703592, at

20   *37.

21           Mr. Paredes argues that he includes allegations regarding other officers, but a review of

22   those allegations reveals that they are "conclusory recitations of the elements of *Monell* liability,

23   which [are] insufficient under *Twombly* and *Iqbal*."  *Ryan v. Santa Clara Valley Transportation

24   Auth.*, No. 16-CV-04032-LHK, 2017 WL 1175596, at *9 (N.D. Cal. Mar. 30, 2017).  Specifically,

25   Mr. Paredes cites his allegations that "the City of San Jose, acting with deliberate indifference to

26   the rights of Mr. Paredes, and of the public in general, knowingly maintained, enforced, and

27   applied customs and practices of . . . [i]nadequately supervising, training, and disciplining officers

28   who the City knew or in the exercise of reasonable care should have known were violent, abused

United States District Court
Northern District of California

11

their authority, and mistreated members of the public" and "[t]he City's policies and practices were not adequate to train its police officers to handle these common and recurring situations which officers around the nation deal with on a daily basis, i.e., the appropriate use of a canine to apprehend a subject."  These allegations are insufficient to state a failure-to-train claim because they do not identify what the training was, how it was deficient, or how it led to Mr. Paredes's harm.  *See Ryan*, 2017 WL 1175596, at \*9; *see also Rodelo*, 2016 WL 561520, at \*3 (granting motion to dismiss because plaintiff failed to plead the specific inadequacies of City's training practices).

Mr. Paredes's citation in his Opposition to the complaint in *Rosenbaum*, a case concerning an SJPD K-9 officer other than Officer Jeffrey, also does not save his claim.  As an initial matter, Mr. Paredes includes no allegations about *Rosenbaum* in his SAC.   Furthermore, Mr. Paredes does not explain how the allegations in *Rosenbaum* support his failure-to-train claim.  Mr. Paredes describes *Rosenbaum* as "[a]lleging in 2019 SJPD Officer Dunn deployed a police K-9 who bit Rosenbaum for over twenty seconds as a result of the 'CITY OF SAN JOSE train[ing] its officers to utilize a "bite and hold" policy regarding the deployment of its K-9s, which results in persons being bit by San Jose Police Department K9s even when not evading arrest (and or surrendering) and also permits officers to use their K-9s for longer periods of time when effectuating arrest, even though such a policy/custom and practice has the effect of increasing injuries to the persons being detained through the use of a police K-9, even if such persons do not pose a threat to officers.'"  Thus, by Mr. Paredes's account, *Rosenbaum* appears to concern alleged affirmative training to utilize a "bite and hold" policy and deploy police canines for "longer periods of time."  By contrast, Mr. Paredes's claim arises from the City's alleged failure to provide adequate training.  Given this difference, it is unclear how the allegations in *Rosenbaum* lend any plausibility to Mr. Paredes's claim.

Defendants' motion to dismiss Mr. Paredes's failure-to-train claim is GRANTED WITH LEAVE TO AMEND.

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Defendants' motion to dismiss Mr. Paredes's claim against the City of San Jose for unconstitutional customs and practices (Claim 3) is GRANTED WITH LEAVE TO AMEND.

2.  Defendants' motion to dismiss Mr. Paredes's claim against the City of San Jose for ratification (Claim 4) is DENIED.

3.  Defendants' motion to dismiss Mr. Paredes's claim against the City of San Jose for failure to train (Claim 5) is GRANTED WITH LEAVE TO AMEND.

To the extent Mr. Paredes requests to proceed with his customs and practices and failure-to-train claims, he SHALL file a Third Amended Complaint by July 28, 2023.  Amendment is limited to the scope permitted by this Order.  If Mr. Paredes files a Third Amended Complaint, Defendants SHALL file a responsive pleading or motion within 30 days of service of the Third Amended Complaint.  If Mr. Paredes does not file a Third Amended Complaint, Defendants SHALL file their responsive pleading to any surviving claims in Mr. Paredes's Second Amended Complaint by August 11, 2023.

Dated:  June 26, 2023

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

13